**Kenneth E. POPP, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–3508
NonArgument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 13, 1986.

Clifford M. Farrell, Columbus, Ohio, for plaintiff-appellant.

Lynne L. England, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and ANDERSON, Circuit Judges.

PER CURIAM:

Kenneth Popp appeals from an order of the district court affirming the Secretary's denial of his claim for disability insurance benefits. On appeal, Popp specifically contends that the Secretary erred in applying the regulations regarding to mental retardation.

Popp filed an application for disability benefits in November 1981, alleging that he had been disabled due to degenerative arthritis and cervical/lumbar disc disease since April 1981. In March 1982, it was determined that Popp had been disabled from April 30, 1981. In May 1982, Popp was notified by the Secretary that, based upon new and material evidence received, his case had been reopened and a revised determination had been made that Popp had not been disabled for any continuous period of twelve consecutive months and was not disabled. This revised determination on Popp's application reversed the earlier decision. Popp requested and received a hearing before an administrative law judge ("ALJ") which was held in April 1983.

At the time of the hearing, Popp was a twenty-nine year old man who held a two-year college associates degree and was enrolled in a third year of college as a history major. From 1972 through 1976, Popp worked as an administrative clerk in the Army. After discharge, he was employed at a VA hospital as a statistical clerk. Other later jobs included work as a postal clerk, soil testing technician, cashier, and algebra teacher at a private school for grades ten through twelve. A vocational report completed by Popp indicated that his past work involved considerable technical knowledge and skills in the use of various machines, tools, and equipment as well as responsibilities for the completion of various reports.

After the hearing before the ALJ, a psychological evaluation of Mr. Popp was conducted in May 1983. The psychologist administered a Bender Motor Gestalt Test, a Wexler Adult Intelligence Scale-Revised ("WAIS–R") Test, and a Minnesota Multiphasic Personality Inventory ("MMPI"). On the WAIS–R, Popp earned a full scale IQ of 73, a verbal IQ of 79, and a performance IQ of 69. The results of the personality testing (MMPI) could not be considered valid because the "values of scores ob-

tained suggests that Mr. Popp attempted to appear in a very unfavorable light." Record, vol. 2 at 261. The psychologist concluded that Popp did not suffer from an organic impairment, though he was functioning "within the Borderline range of measured intelligence." *Id.*

Popp asserts that he meets the requirements of Listing 12.05(C) of 20 C.F.R. Part 404, subpart P, Appendix 1 (1985). A person with an impairment which is listed in Appendix 1 will be found disabled without consideration of age, education or work experience. 20 C.F.R. § 404.1520(d) (1985). Listing 12.05 provides:

> 12.05. *Mental retardation.* As manifested by ...
>
> (C) IQ of 60 to 69 inclusive (see 12.00B4) and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Listing 12.00B4 begins:

> (4) *Mental retardation* denotes a lifelong condition characterized by below-average intellectual endowment as measured by well standardized intelligence (IQ) tests and associated with impairment in one or more of the following areas: learning, maturation, and social adjustment. The degree of impairment should be determined primarily on the basis of intelligence level and a medical report. Care should be taken to ascertain that test results are consistent with daily activities and behavior.

The listing further provides that the WAIS test is a well standardized comprehensive intelligence test appropriate to such determination. In addition, it provides that, where more than one IQ level is derived from the testing, *e.g.,* verbal, performance and full IQ's from WAIS testing, the lowest of these should be used in conjunction with 12.05.

It is clear that Popp's performance IQ of 69, if believed, should be the IQ score used in applying Listing 12.05(C). *See, e.g., Edwards by Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir.1985); *Ambers v. Heckler,* 736 F.2d 1467, 1470 (11th Cir. 1984); *Edwards v. Heckler,* 736 F.2d 625, 629 (11th Cir.1984). Popp asserts that, because his performance IQ was within the range provided for in Listing 12.05(C), the ALJ should have considered whether another impairment was present which would satisfy Listing 12.05(C). In fact, the ALJ found the results of the tests incredible and did not carry out the analysis that Popp suggests.

The issue to be resolved by this court is whether the ALJ may find the results of an IQ test to be incredible so that Listing 12.05 is not satisfied, and, if such an analysis is permissible, whether the ALJ was justified in disregarding the test results in this case.

■ Listing 12.00B4 does not require the Secretary to make a finding of mental retardation based on the results of an IQ test alone. *See Strunk v. Heckler,* 732 F.2d 1357, 1360 (7th Cir.1984) ("The plaintiff has failed to supply this court, nor have we found any case law requiring the Secretary to make a finding of mental retardation based *solely* upon the results of a standardized intelligence test in its determination of mental retardation"). The listing requires the Secretary to take into account the intelligence test *and* the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior. Thus, in the instant case, it was proper for the ALJ to examine the other evidence in the record in determining whether Popp was in fact mentally retarded.

■ There is substantial evidence in the record to support the ALJ's finding that Popp is not mentally retarded. First, the ALJ pointed out that Popp was close to completing the requirements for a bachelor of science degree and had a history of having taught high school algebra. Moreover, Popp was not alleged to be failing in his college course studies. The ALJ prop-

erly found this to be inconsistent with a finding of mental retardation.

In response, Popp argues that academic success earlier in his life, i.e., his associates degree, does not mean that he cannot be found disabled due to mental retardation. It is suggested that severe depression, which is documented in the medical records, has caused Popp to become retarded. Appellant's brief suggests that "[r]etardation or poor WAIS–R scores due to difficulty in thinking and concentrating is therefore a logical result of severe depression." Such recently occurring, and possibly temporary, retardation would not be disabling under the listings. According to Listing 12.00B4, "[m]ental retardation denotes a *lifelong* condition" (emphasis added). If Popp's depression is truly the reason for his poor test score, there is no indication in the record that it is a permanent condition.

The ALJ offered additional reasons for his finding that Mr. Popp is not mentally retarded and for discrediting the IQ score. Dr. Baker, the testing psychologist, noted that the scores on the personality tests (MMPI) were considered invalid because Popp tended to place himself in a very unfavorable light. While the psychologist's report did not comment on the validity of the IQ (WAIS–R) tests, this evidence as well as other inconsistencies in Popp's testimony, demeanor, and reports of medical treatment led the ALJ to the conclusion that Popp was less than credible. For example, while he was allegedly disabled, and reported that he was unable to move his head and use his right arm, Popp engaged in umpiring softball games until April 1982. Further, examining physicians commented on the exaggeration which accompanied Popp's attempts to demonstrate the restriction of motion in his limbs or even refusal by Popp to attempt the maneuvers requested for testing. *See, e.g.,* Record, vol. 2 at 219, 229, 256 and 257.

Additionally, the evaluation of a board certified psychiatrist in April 1982 supports the ALJ's finding. The psychiatrist reported that Popp embellished his answers to questions regarding his physical symptoms. He also seemed to exaggerate his difficulty in remembering, but had no real difficulty in the testing. His answers, however, were relevant and coherent. The psychiatrist concluded that Popp was depressed, manifested by a marked functional overlay to his orthopedic problems. Moreover, the tests performed by the psychiatrist indicated that Popp was fully oriented to time, place, and person, that he was able to recall digits backward, had no difficulty naming past presidents of the United States, was able to subtract by sevens from one hundred, and think abstractly. These testing results seem to be in conflict with those derived a year later by the psychologist. Moreover, the fact that yet another doctor commented on the tendency of the claimant to exaggerate casts further doubt on the validity of the instant test score.

In summary, the ALJ was not required to find that Popp was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior. There is substantial evidence in the record to support the ALJ's finding that the results of the IQ test were incredible because they were inconsistent with other evidence and because there was good reason to believe that Popp exaggerated his problems.

AFFIRMED.