[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
November 25, 2005
**THOMAS K. KAHN**
**CLERK**

No. 05-13848
Non-Argument Calendar
_____

D. C. Docket No. 04-00251-CV-WS-M

CHANDRA HENRY,
o.b.o. Lakeisha R. Henry,

Plaintiff-Appellant,

versus

JO ANNE B. BARNHART,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(November 25, 2005)**

Before DUBINA, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Appellant Lakeisha Henry appeals the district court's order affirming the

Commissioner's denial of her application for children's supplemental security income benefits under §§ 1602 and 1614(a)(3)(C) of Title XVI of the Social Security Act and 42 U.S.C. § 1381a. Henry argues that her impairments, as demonstrated by her test results, attendance in special education classes, and an Attention Deficit Hyperactivity Disorder (ADHD) diagnosis, meet the requirements of section 112.05D of the Listings for mental retardation. Further, Henry contends that her impairments functionally equal the Listings, and that the Administrative Law Judge (ALJ) erred by not giving proper weight to Henry's treating psychologist, Dr. Reynolds's, opinion.

This court must determine whether the ALJ's denial of Henry's application for benefits is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). This court also reviews whether the correct legal standards were applied. *See McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) (citations omitted). "In other words, substantial evidence is 'more than a mere scintilla.'" *Id.* (citation omitted).

A person under the age of 18 is disabled, and thus entitled to SSI benefits, if the person "has a medically determinable physical or mental impairment, which

results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). Social Security regulations provide a three-step sequential evaluation process for determining whether a child is disabled. 20 C.F.R. § 416.924(a). *See Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999). First, the ALJ must determine whether the child is engaged in substantial gainful activity. *Wilson*, 179 F.3d at 1277 n.1. If yes, the child is not disabled, but if no, the ALJ determines whether the claimant has a severe impairment. *Id.* If not, the child is not disabled. *Id.* If yes, the ALJ then considers whether the child has an impairment that meets, medically equals, or functionally equals the Listings of Impairments. *Id.* If the child satisfies a Listing, the child is conclusively disabled. *Id.*

The ALJ found that Henry was not engaged in substantial gainful activity, and that her diagnosis of ADHD and her borderline intellectual functioning constituted "severe" impairments. Accordingly, the ALJ had to determine whether Henry's impairment meets or is functionally equivalent to section 112.05D of the Listings for mental retardation.

Under section 112.05 of the Listings, mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in

adaptive functioning. The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05. In relevant part, section D of Listing 112.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function. . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 112.05D.

"[T]he ALJ is allowed some leeway to evaluate other evidence [other then I.Q. test score] when determining the validity of an I.Q. score. . . ." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). An ALJ should examine whether the results of an I.Q. test are consistent with the other medical evidence and the claimant's daily activities and behavior. *See Popp v. Heckler*, 779 F.2d 1497, 1499-1500 (11th Cir. 1986).

Substantial evidence supports the ALJ's finding that Henry did not meet the requirements of section 112.05D of the Listings for mental retardation. Although Henry's testing scores fall within the range to meet the requirements of section 112.05D, substantial evidence supports the ALJ's findings that Henry is functioning at a higher level. *See Popp*, 779 F.2d at 1499-1500. Upon evaluation of Henry's daily school activities, the ALJ found, and the records supports, that Henry takes some regular classes. Additionally, one of her teachers reported that

4

she needs help but concentrates well on her work, even excelling at times, and she obtains low passing grades. Accordingly, substantial evidence supports the ALJ's findings that Henry is functioning at a higher level than her I.Q. scores demonstrate, and thus she does not meet the requirements of section 112.05D.

Next, Henry argues that her impairments functionally equal the Listings for mental retardation. In determining whether a child's impairment functionally equals a Listing, the regulations require consideration of six "domains," which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1). These six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1)(i)-(vi).

To satisfy the "functional equivalent" standard, a child claimant must have "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). A "marked" limitation is defined as a limitation that "interferes seriously with [the] ability to independently initiate, sustain, or complete activities," and is "more than moderate." *Id.* § 416.926a(e)(2)(i). An "extreme" limitation is reserved for the "worst limitations" and is defined as a limitation that "interferes very seriously with [the] ability to independently initiate, sustain, or

5

complete activities," but "does not necessarily mean a total lack or loss of ability to function." *Id.* § 416.926a(e)(3)(i).

Substantial evidence supports the ALJ's finding that Henry's impairments are not functionally equal to the requirements of section 112.05D of the Listings for mental retardation. Evidence that Henry is able to do her homework, complete her class work, and participate in the science fair, supports the ALJ's finding that she does not have a marked or severe limitation in the first domain, acquiring and using information. Additionally, an examination of Henry found that her thought process was logical. Although Henry may need some assistance with reading, her teacher reported that she has a good attention span, is on task in class, and completes all of her assignments on time, supporting the ALJ's finding that she does not have a limitation in attending or completing task under the second domain. Henry does not have marked or severe limitations in the third domain of interacting with others; her teacher noted she gets along with her peers and teachers, and Dr. Tocci's evaluation showed she was cooperative and passive and demonstrated normal eye contact. As for the domain of moving about and manipulating objects, her motor activity was unremarkable. In the domain of caring for herself, Henry's mother stated that she is able to do so. Finally, in the domain of health and physical well-being, her mother reported, and the record

6

shows, no physical problems.

Finally, Henry argues that the ALJ did not give proper weight to Henry's treating psychologist, Dr. Reynolds's, opinion. "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary. The [ALJ] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

The ALJ did not explicitly state what weight he gave to Dr. Reynolds's opinion. However, the ALJ properly rejected Dr. Reynolds's interpretation of the I.Q. scores, finding that Henry was actually functioning at a higher level. *See Popp*, 779 F.2d at 1499-1500. Additionally, contrary to Henry's position, Dr. Reynolds did not provide a firm diagnose of mental retardation, but rather gave a "provisional" diagnosis of mild retardation. The ALJ did not dispute Dr. Reynolds's opinion that Henry has ADHD, and thus, the ALJ implicitly gave great weight to that diagnosis. Accordingly, the ALJ did not err in the weight he gave to Dr. Reynolds's opinion.

Because we conclude from the record that the ALJ's findings are supported by substantial evidence, we affirm the district court's order affirming the

7

Commissioner's denial of Henry's application for SSI benefits.

**AFFIRMED.**