[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-10441

_____

D.C. Docket No. 1:12-cv-00005-MP-GRJ


DIANE W. SIRON,

Plaintiff - Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(February 18, 2014)

Before TJOFLAT, WILSON and RIPPLE,[*] Circuit Judges.

PER CURIAM:

The case before us is an appeal from the district court's judgment affirming a denial of Social Security benefits to the Appellant, Diane Siron. After a review of the record and consideration of both parties' briefs, we reverse the district court's judgment and remand to the district court with instructions to remand for a new administrative hearing not inconsistent with this opinion.

On April 17, 2007, Siron filed applications for disability insurance benefits under Title II and Supplemental Security Income under Title XVI of the Social Security Act, alleging an onset date of January 1, 1998. After a hearing, an administrative law judge (ALJ) denied her request for benefits. Specifically, the ALJ denied Siron's request for benefits under 20 C.F.R. pt. 404, subpart P, app. 1 § 12.05, which covers mental retardation. The ALJ credited Siron's perceptual reasoning index (PRI) of 73 over her full scale IQ of 59. The Social Security Administration Appeals Council denied Siron's request for review on November 15, 2011, which served as the final decision for the Social Security Commissioner (Commissioner). Thereafter, Siron filed a complaint in the United States District

---

[*] The Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Court for the Northern District of Florida on January 11, 2012.  The district court affirmed the Commissioner's decision on January 3, 2013.

We review the legal principles upon which the Commissioner's decision is based de novo, but "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*  Thus, it must be "more than a scintilla." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam) (internal quotation marks omitted).

Siron sought benefits under 20 C.F.R. pt. 404, subpart P, app. 1 § 12.05, which governs qualification for benefits for mental retardation.  A claimant may qualify under subsection (B) of § 12.05 if she demonstrates "[a] valid verbal, performance, or full scale IQ of 59 or less."  "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, *we use the lowest of these in conjunction with 12.05*." *Id.* § 12.00(D)(6)(c) (emphasis added).  "Generally, it is preferable to use IQ measures that are *wide in scope and include items that test both verbal and performance abilities*." *Id.* at § 12.00(D)(6)(d) (emphasis added).

3

"However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." *Id.* at § 12.00(D)(6)(a); *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (per curiam). Reports that "[do] not include the quantum of medical evidence required to document whether the results of the intelligence test were consistent with the plaintiff's daily behavior" are given less weight than those that "ma[k]e the required specific findings regarding plaintiff's mental condition, and extensively discuss[] her personal and medical history and current lifestyle in support of [the] findings." *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir. 1984).

The ALJ's decision to discredit Siron's full scale IQ in favor of her PRI score is not supported by substantial evidence. Because the lowest of the verbal, performance, and full scale IQs should be used in conjunction with § 12.05(B), *see* § 12.00(D)(6)(c), the ALJ should have applied Siron's full scale IQ of 59 in assessing whether Siron satisfied § 12.05(B). Use of full scale IQ is also supported by Section 12.00's instruction that "it is preferable to use IQ measures that are wide in scope and include items that test both verbal and performance abilities." § 12.00(D)(6)(d). Although an ALJ may reject the lowest IQ score, the ALJ's decision to do so here was not supported by substantial evidence.

4

First, the evidence presented in cases where we affirmed an ALJ's rejection of an IQ score overwhelmingly indicated that the claimant was not mentally retarded and likely attempted to tailor results to effect a desired outcome, which is not the case here. *See Popp*, 779 F.2d at 1499 (citing Popp's history of teaching algebra and near completion of a bachelor's degree as "substantial evidence . . . to support the ALJ's finding that Popp [was] not mentally retarded"); *see also Strunk*, 732 F.2d at 1360 (rejecting the claimant's IQ score and noting responses that "contradict[ed] . . . her normal ability of social interactions and conversation" as well as her "deliberate fabrication" (internal quotation marks omitted)). Unlike Popp and Strunk, Siron's history completely lacks evidence "suggest[ing] that [she] attempted to appear in a very unfavorable light." *Popp*, 779 F.2d at 1499.

Second, Dr. Tozzo-Julian's determination that "the [PRI] appears to be the best measure of [Siron's] overall intelligence," a determination on which the ALJ relied, is conclusory and unsupported by her own, more specific findings regarding Siron's personal and medical history, current lifestyle, daily behavior, and mental condition. *See Strunk*, 732 F.2d at 1360 (discrediting one psychiatrist's determination that the claimant was mentally retarded in favor of another psychiatrist's contrary conclusion because the former lacked such specific findings, while the latter based his conclusion on such findings). In Dr. Tozzo-Julian's 2008 evaluation, she noted Siron's "moderately impaired" attention,

5

"errors on serial threes and [inability] to complete serial sevens," "moderately impaired" digit span, "problems focusing on most tasks," "moderately impaired" memory functions, "below average" verbal reasoning skills, "low average" premorbid intelligence, inability to spell "world" backward, and "attentional deficits."  Dr. Tozzo-Julian noted similar symptoms in her 2010 evaluation.

Therefore, we reverse the district court's order affirming the Commissioner and remand with instructions to remand for a new hearing consistent with this opinion.

**REVERSED AND REMANDED.**