[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16445
Non-Argument Calendar
_____

D.C. Docket No. 7:15-cv-00858-LSC

LASHONJA GIBBS,

                                                        Plaintiff - Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(April 27, 2017)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Lashonja Gibbs appeals the district court's affirmance of an Administrative

Law Judge's ("ALJ") denial of her application for social security income, pursuant

to 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, Gibbs argues that: (1) substantial

evidence does not support the ALJ's determination that she does not meet Listing 12.05(C), the listing for intellectual disability; and (2) the district court applied the wrong standard to review the ALJ's decision.  After thorough review, we affirm.

We review the Commissioner's decision to assess whether it is supported by substantial evidence and whether proper legal standards were applied.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  Substantial evidence is more than a scintilla and is the relevant evidence a reasonable person would accept as adequate to support a conclusion.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  Even if the evidence preponderates against the ALJ's findings, we must affirm if the ALJ's decision is supported by substantial evidence.  Id. at 1158-59.  We may not reweigh the evidence or substitute our judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

The Social Security Regulations outline a five-step sequential process that is used to analyze whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4).  At step one, the claimant must show she is not currently engaged in substantial gainful activity.  Id. § 404.1520(a)(4)(i), (b); Jones, 190 F.3d at 1228.  Next, she must show she has a severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii), (c); Jones, 190 F.3d at 1228.  At step three, she must attempt to show the impairment meets or equals the criteria contained in a Listing of Impairments.  20 C.F.R. § 404.1520(a)(4)(iii), (d); Jones, 190 F.3d at 1228.  If she

2

cannot meet or equal the criteria, she must show she has an impairment preventing her from performing her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f); Jones, 190 F.3d at 1228. If she establishes she cannot perform her past relevant work due to a severe impairment, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v), (g); Jones, 190 F.3d at 1228.

Here, Gibbs claims she established, at Step 3 of the sequential process, that she had an impairment that met the criteria in Listing 12.05(C) of the Listings of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d). At Step 3, the claimant has the burden of proving that an impairment meets or equals a listed impairment. Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991). To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the Listing's specific criteria. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). A diagnosis alone is insufficient to establish that a claimant "meets" a Listing. 20 C.F.R. § 416.925(d).

At the time of the ALJ's ruling, Listing 12.05's applicable version contained an introductory paragraph with a diagnostic description for "intellectual disability." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (2015). An impairment meeting the Listing's requirements had to satisfy the diagnostic description in the introductory

3

paragraph, as well as one of the four sets of criteria (in paragraphs A through D) described in § 12.05. Id. Listing 12.05, "intellectual disability," provided:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>>
>> 2. Marked difficulties in maintaining social functioning; or
>>
>> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
>>
>> 4. Repeated episodes of decompensation, each of extended duration.

Id. § 12.05 (2015) (emphasis added). The Administration has not specifically defined "deficits in adaptive functioning." See id. §§ 12.00, 12.05 (2015). However, according to the Diagnostic and Statistical Manual of Mental Disorders

4

("DSM-V"), adaptive functioning refers "to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background. Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 37 (5th ed. 2013).

Relevant here, Listing 12.05(C) requires: (1) evidence of a valid verbal, performance, or full scale IQ of 60 through 70; and (2) evidence of a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (2015). A claimant typically meets the criteria for presumptive disability under § 12.05(C) if she presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment with more than minimal effect on her ability to perform basic work activities. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Nevertheless, an ALJ is permitted to find the results of an IQ test to be incredible -- and, thus, that Listing 12.05(C) is not satisfied -- if the IQ score is inconsistent with other evidence about the claimant's daily activities and behavior. See Popp v. Heckler, 779 F.2d 1497, 1499-1500 (11th Cir. 1986) (rejecting a § 12.05(C) mental retardation claim where an IQ score of 69 was inconsistent with other evidence and there was good reason to believe that the claimant exaggerated

his problems). An ALJ "may reject any medical opinion if the evidence supports a contrary finding." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987).

In this case, substantial evidence supports the ALJ's decision that Gibbs does not meet Listing 12.05(C) because she lacks the requisite deficits in adaptive functioning. See Crawford, 363 F.3d at 1158. Importantly, the evidence indicates that Gibbs was generally able to cope with common life demands and meet standards of personal independence. DSM-V at 37. Among other things, it shows that Gibbs lived alone at times, and, though her mother helped, Gibbs cared for her daughter. Gibbs was able to do her own laundry, slowly clean her home, and cook simple meals. She had her driver's license and was able to drive. Gibbs admitted that she could handle her own money and pay bills. Additionally, although her friend said Gibbs was a slow shopper, Gibbs was able to shop. Gibbs also offered that she went to church, and would sometimes travel with her church to volunteer at places such as nursing homes. In her special education program, Gibbs received several passing grades in the ninth and tenth grade.

Gibbs claims that the ALJ failed to correctly interpret the meaning of intellectual disability and deficits in adaptive functioning, since she repeated both first and sixth grade, she did not complete high school, her work history was sporadic, and her ability to cook, live by herself, and care for her daughter was extremely limited. We disagree. To begin with, it is not enough for Gibbs to show

6

that she meets the criteria for a <u>diagnosis</u> of intellectual disability under the DSM-V and mild mental retardation under the DSM-IV; rather, for her impairment to satisfy a listing, she must meet the Listing's <u>criteria</u>.  <u>See</u> 20 C.F.R. § 416.925(d). Here, the criteria include: (1) evidence of a valid verbal, performance, or full scale IQ of 60 through 70, <u>and</u> (2) evidence of a physical or other mental impairment imposing an additional and significant work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(C) (2015).

As for Gibbs's claim that the ALJ ignored her school records -- which indicated that she received poor grades, did not complete high school, and was in a special education program -- the ALJ was aware of this information.  As the record shows, the ALJ expressly noted that Gibbs had reported to Dr. Jan Boggs during a psychological examination that she had quit school in the eleventh grade and received special education services.

Nor are we convinced by Gibbs's argument that the ALJ misrepresented evidence by overstating her abilities based on the fact that she could cook, care for her daughter, shop, and handle her money.  To the contrary, the ALJ was simply referencing facts taken from the record.  Gibbs claims these facts are undercut by her limitations, given the simplicity of the meals she prepares, the fact that she had to take the driver's exam three times to pass, and the fact that she had never had a checking account.  But Gibbs essentially is asking this Court to reweigh the

evidence and substitute its judgment for that of the ALJ, which is not the standard we are obliged to follow when reviewing the ALJ's determination.  See Dyer, 395 at 1210.  Indeed, even if this evidence were to preponderate against the ALJ's findings, we would nevertheless be required to affirm, since substantial evidence supports the finding.  See Crawford, 363 F.3d at 1158-59.

Substantial evidence also supports the ALJ's decision to assign little weight to the opinion of Dr. Donald Blanton, the consultant Gibbs's attorney retained. See id. at 1158.  As the ALJ noted, the evidence in the record, including Dr. Blanton's own report, indicated that Gibbs could largely function in her daily life activities.  Furthermore, Dr. Boggs was unable to accurately diagnose Gibbs based on "obvious" malingering, casting doubt on the credibility and validity of Dr. Blanton's IQ testing.  See Popp, 779 F.2d at 1499-1500.  In fact, none of the healthcare providers who saw Gibbs regularly, such as Dr. Gary Walton and the staff at West Alabama Mental Health, diagnosed Gibbs with mild mental retardation.  Thus, because substantial evidence supports the ALJ's findings, we are compelled to affirm.

We are also unpersuaded by Gibbs's challenge to the district court's decision.  For starters, our analysis in Social Security cases generally focuses on the ALJ's decision, not that of the district court.  See Crawford, 363 F.3d at 1158. In any event, the district court did not apply the wrong standard in determining that

substantial evidence supported the ALJ's determination.    Gibbs points to the court's statement that Gibbs's reliance on certain evidence in the record was irrelevant.    However, this statement was made in the context of explaining the substantial evidence standard.  The district court correctly noted that, so long as substantial evidence supported the ALJ's determination, it must be affirmed even if other evidence in the record preponderated against it.    Accordingly, the district court did not err in affirming the ALJ's denial of SSI benefits.

**AFFIRMED**.