[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11999
_____

D.C. Docket No. 4:15-cv-00191-CDL-TQL


JEANIE BARDGE,

Plaintiff - Appellant,

versus

NANCY A. BERRYHILL,
Acting Commissioner, Social Security Administration,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(August 24, 2018)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,* Senior District
Judge.

_____

*The Honorable Paul C. Huck, United States District Court for the Southern District of Florida,
sitting by designation.

PER CURIAM:

Jeanie Bardge appeals the district court's order affirming the Social Security Commissioner's denial of her application for supplemental security income (SSI), pursuant to 42 U.S.C. § 1381. An ALJ found that Ms. Bardge was not disabled because, although she suffered from numerous severe impairments, none of her impairments met or equaled a listed impairment (including 12.05, intellectual disability), and because she still had the residual functional capacity to perform work that existed in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a). After careful review, and with the benefit of oral argument, we find no reversible error, and affirm.

## I

We review *de novo* the district court's determination of whether substantial evidence supports the ALJ's decision. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). We review the Commissioner's decision only insofar as whether it is supported by substantial evidence. *See id.* "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)).

2

## II

The ALJ determined that Ms. Bardge suffered from a number of severe impairments:  degenerative disc disease, diabetes mellitus, status post right humerus replacement, gastroesophageal reflux disease, inflammatory bowel syndrome, hypertension, obesity, and cognitive impairment/borderline intellectual functioning.  On appeal, Ms. Bardge challenges the ALJ's determination at step three of the five-step evaluation process set forth in 20 C.F.R. § 416.920(a) that her impairments did not meet listing 12.05B or 12.05C.  In particular, Ms. Bardge contends that the ALJ was wrong to reject her IQ score of 59, as determined by a qualified physician.  She also contends that the ALJ incorrectly evaluated the medical opinion evidence of numerous doctors, and did not properly explain the weight assigned to each piece of opinion evidence.

## A

For an impairment to meet listing 12.05, it must satisfy both the (1) diagnostic description for intellectual ability as set forth in the listing's introductory paragraph and (2) one of four additional sets of criteria (listed in subparagraphs (A) though (D)).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00, 12.05 (2015).  *See also* 20 C.F.R. § 416.925 (explaining how the ALJ applies the Listing of Impairments).  The introductory paragraph of listing 12.05 defined intellectual disability as requiring (1) significantly subaverage general intellectual

functioning, (2) with deficits in adaptive functioning, (3) that manifested before age 22. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2015). Examples of "adaptive activities" that may be considered in assessing a claimant's functional limitations include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, [and] caring appropriately for . . . grooming and hygiene." § 12.00(C)(1) (2015).

Under the applicable version of 12.05(B), a claimant meets the criteria for presumptive disability when she presents a verbal, performance, or full scale IQ score at or below 59. *See* § 12.05(B) (2015). But the IQ score is not considered alone. Rather, an IQ score should be considered in conjunction with the claimant's developmental history and degree of functional limitations. *See* § 12.05(D)(6)(a) (2015). We have recognized that an IQ score is not conclusive evidence of intellectual disability when it is "inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). *See also Crayton v. Callahan*, 120 F.3d 1217, 1220 (11th Cir. 1997) ("[A] valid IQ score need not be conclusive . . . where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior[.]"); *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting claim of intellectual disability despite IQ score due to evidence that

4

claimant had associate's degree, was enrolled in college, and worked in several jobs).

Substantial evidence supports the ALJ's determination that Ms. Bardge failed to satisfy all the criteria of listing 12.05. Even assuming the ALJ was incorrect in rejecting her IQ score of 59, Ms. Bardge failed to show that she had the required deficits in adaptive functioning described in the introductory paragraph of the listing. *See* §§ 12.00, 12.05 (2015). Ms. Bardge testified at two different ALJ hearings about her daily activities, which included cleaning the home in which she lived alone, going grocery shopping for herself, assisting elderly church friends running their errands, driving herself, driving a church van on a weekly basis to transport parishioners between their homes and the church, reading simple materials, paying her own bills, caring for her grandchildren, and tending to her own personal hygiene. The evidence shows that she provided similar information about her activities of daily living to various treating physicians over the course of years. Because Ms. Bardge did not show she suffered from deficits in adaptive functioning, the ALJ's finding that she did not meet listing 12.05 was supported by substantial evidence. *See Crawford*, 363 F.3d at 1158.

## B

Ms. Bardge also challenges the weight that the ALJ assigned to her doctors' opinions.

The ALJ considers many factors when weighing medical evidence, including whether an opinion is well-supported and consistent with the record. *See* C.F.R. § 416.927. A medical opinion will often be given a greater weight if the medical opinion is fairly consistent with the record as a whole, and may be given lesser weight or rejected outright if the evidence supports a finding contrary to the medical opinion. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

The ALJ committed no reversible error in giving little weight to the medical opinions of Dr. Shapiro and Dr. Shosheim, and in giving some weight to the medical opinions of Dr. Schwartz and Dr. Garner. In all cases, the ALJ explained the reasons for the weights assigned, and he relied most heavily on the doctors' opinions which best aligned with the significant evidence in the record.

## III

Substantial evidence supports the commissioner's denial of SSI benefits. Therefore, we affirm.

**AFFIRMED.**