John LOWERY, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, MD, Sec., Dept. of Health & Human Services, Defendant–Appellee.

No. 91–7527
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Dec. 21, 1992.

R. Michael Booker, Birmingham, Ala., for plaintiff-appellant.

E.T. Rolinson, Jr., Asst. U.S. Atty., Mobile, Ala., Mary Ann Sloan, Mack A. Davis, Bruce R. Granger, Elyse Sharfman and Beth Henderson, Office of Gen. Counsel, Atlanta, Ga., for defendant-appellee.

Before FAY, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

The sole issue in this case is whether substantial evidence supports the Secretary's determination that Lowery's retardation is not a lifelong condition which manifested itself before Lowery reached age twenty-two. Because substantial evidence does not support the determination, we reverse.

## BACKGROUND

On July 16, 1987, John Lowery, the appellant, filed an application for supplemental security income benefits. The Secretary denied Lowery's application initially and also denied the application upon reconsideration. After a hearing, an administrative law judge (ALJ) concluded that Lowery was not disabled, finding that Lowery did not meet or equal the requirements of section 12.05(C) of the Listings of Impairments. See 20 C.F.R. Part 404, Subpart P, Appendix 1 (1992). On March 2, 1990, the Appeals Council denied Lowery's request for review, making the ALJ decision the final decision of the Secretary.

On May 1, 1990, Lowery sought judicial review of the Secretary's final decision in the United States District Court for the Southern District of Alabama. On April 29, 1991, a United States Magistrate Judge issued a recommendation that the Secretary's decision be affirmed, finding that substantial evidence supported the Secretary's conclusion that Lowery was not disabled. Over Lowery's objections, the district court adopted the recommendation of the magistrate judge on May 15, 1991.

## CONTENTIONS

On appeal, Lowery contends that the Secretary's decision denying his application for supplemental security income benefits is not supported by substantial evidence. Lowery argues that the evidence establishes that he meets or equals the requirements for disability under section 12.05(C), based on his documentation of a valid I.Q. score of 69 and the ALJ's conclusion that Lowery suffered a "severe" physical impairment that restricted him to performance of no greater than light work. The Secretary concedes that Lowery has a current valid I.Q. score of 69, and that he has an additional and significant work-related limitation of function. The Secretary, however, argues that the district court properly determined that Lowery's retardation is not a lifelong condition which manifested itself before age twenty-two, a third requirement of a section 12.05(C) disability.

## DISCUSSION

 The Secretary's factual findings are conclusive if supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). Substantial evidence is defined as more than a mere scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Although our review is a limited one, the entire record must be scrutinized to determine the reasonableness of the Secretary's factual findings. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir.1987).

To establish a disability under section 12.05(C), a claimant must present evidence of a valid verbal, performance, or full-scale I.Q. score of between 60 and 70 inclusive, and of a physical or other mental impairment imposing additional and significant work-related limitation of function. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) (1992). In addition, the general introduction on "mental retardation and autism" provides that a section 12.05(C) claimant must demonstrate that the retardation is a lifelong condition which manifested itself before age twenty-two. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05 (1992).

 Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir.1985). This court, however, has recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir.1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's I.Q. score of 69 was inconsistent with evidence that he had a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher). Although the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment. *See Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir.1984) ("consideration of the fact that [claimant] could return to her past work is not a relevant inquiry once she has met the Listing of Impairments in Appendix 1"); 20 C.F.R. § 404.1520(d).

 The basis for the findings below is ambiguous. The ALJ found that Lowery does not have an impairment or combination of impairments that meet or equal the requirements of section 12.05(C). Apparently, the ALJ based this finding on a rejection of the validity of Lowery's I.Q. score after a *Popp v. Heckler*-style analysis of the inconsistency between Lowery's I.Q. score and evidence of his daily activities, behavior, work history, and old educational placement tests. The ALJ specifically recognized that Lowery would be disabled under section 12.05(C) if Lowery's I.Q. score were accepted as the sole indicator of the claimant's residual intellectual capacity and considered in combination with his physical impairments. The Appeals Council, however, stated that the ALJ did not find Lowery's I.Q. scores invalid based on a *Popp v. Heckler* analysis. Instead, the Appeals Council concluded that the ALJ based its finding that Lowery did not meet the requirements of section 12.-05(C) based on evidence that Lowery's mental retardation did not manifest itself before age twenty-two. The recommendation of the magistrate judge, adopted as the opinion of the district court, further complicates the basis for the ALJ's finding. The magistrate judge concludes that the ALJ did choose to discount Lowery's I.Q. scores based on a *Popp v. Heckler*-style analysis of inconsistency with Lowery's daily activi-

ties, behavior, work history, and other relevant evidence.

Despite the ambiguity, the Secretary's brief concedes that Lowery has a current valid I.Q. score of 69 and an additional and significant work-related limitation of function. Thus, this court need only decide whether substantial evidence in the record supports the ALJ's finding that Lowery's mental retardation did not manifest itself before age twenty-two. We readily conclude that substantial evidence does not support the ALJ's finding that Lowery's mental retardation did not manifest itself before age twenty-two.

In making a determination that Lowery did not suffer from an inherently disabling lifelong deficit in intellectual functioning, the ALJ weighed the results of Lowery's July, 1988 mental evaluation against findings in a March, 1963 educational placement evaluation. Dr. Welch, who performed the July, 1988 tests, found that Lowery functioned only in the borderline range of intellectual abilities. Specifically, Dr. Welch found that Lowery achieved a verbal I.Q. of 70, a performance I.Q. of 72, and a full-scale I.Q. of 69 on the Wechsler Adult Intelligence Scale–Revised (WAIS–R). Dr. Welch also made the following observations: (1) Lowery's scores were "relatively consistent and suggest a longstanding deficit in intellectual performance;" (2) Lowery demonstrated a relative strength in short term memory, but a relative deficit in arithmetic computation; (3) Lowery's reported attendance in school through ninth grade and special education is consistent with his current evaluation; (4) Lowery had a mildly constricted range of interest in activities; and (5) Lowery can relate adequately with others, follow one and two-step instructions, and manage his own financial affairs with minimum supervision.

The ALJ weighed the evidence in the July, 1988 evaluation against the results of educational placement tests performed in March of 1963. The March, 1963 test reports that: (1) Lowery scored an 81 on the verbal test using the Wechsler Intelligence Scale for Children (WISC) testing scale, but does not include either a performance or full-scale score; (2) even though Lowery was fifteen years old, Lowery had a mental age of ten years, five months and I.Q. of 75 in 1963, based on a separate PPVT test; (3) Lowery had reading and word recognition skills on an average third grade level, even though Lowery was then in a special class at a junior high school; and (4) that Lowery performed within an average range "for his mental age" on two sub-tests designed to measure abilities not related to education or schooling. The March, 1963 report ultimately recommended that Lowery be returned to the regular classroom because Lowery was not "sufficiently retarded so as to require the facilities of an Exceptional Class."

Based on a balancing of the evidence in the March, 1963 against the July, 1988 evaluation, the ALJ specifically found that Lowery did not possess "an inherently disabling lifelong deficit in intellectual functioning." Instead, the ALJ found that the March, 1963 testing results indicated that Lowery's mental deficiencies are "idiopathic or environmental in nature, as opposed to any lifelong loss of intellectual capacity."

Besides the seemingly inconsistent I.Q. testing scores, the ALJ's finding that Lowery's mental retardation is not a lifelong condition is contrary to essentially all the evidence contained in both the March, 1963 and July, 1988 medical reports. The March, 1963 report ultimately recommends that Lowery be moved to a regular classroom because Lowery was not "sufficiently retarded" to require use of facilities in the special education classes. But, the March, 1963 report describes in detail a fifteen-year-old, eight month student with test results equivalent to a mental age of ten years, five months, and a junior high school student who had the reading speed and word recognition skills on an average third grade level. Indeed, the March, 1963 testing report indicates that Lowery only scored in the average range "for his mental age" on two sub-tests designed to measure abilities not related to a student's education or schooling. Consistent with these findings, the July, 1988 report concludes that Lowery's I.Q. scores and his reported at-

tendance in special education classes through ninth grade suggest a "longstanding deficit in intellectual performance." Thus, the March, 1963 and July, 1988 mental testing reports are consistent in describing Lowery's extensive mental retardation, except for the I.Q. scores.

Although the WISC and PPVT I.Q. scores appear to support the ALJ's finding on the lifelong retardation issue, the ALJ had absolutely no basis in the record for a meaningful comparison of the WISC, PPVT and WAIS–R scores. Regarding documentation of mental impairments, section 12.-00(D) provides that

> identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. In this connection, it must be noted that on the WAIS, for example, IQs of 70 and below are characteristic of approximately the lowest 2 percent of the general population. In instances where other tests are administered, it would be necessary to convert the IQ to the corresponding percentile rank in the general population in order to determine the actual degree of impairment reflected by those IQ scores.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(D) (1992). Contrary to the requirement in section 12.00(D), the ALJ in this case compared Lowery's I.Q. scores on the 1963 WISC, PPVT and the 1988 WAIS–R tests without making the necessary conversion of the I.Q. to the corresponding percentile rank in the general population. Without such a conversion, a direct comparison of the WISC and PPVT and WAIS–R score was improper based on the record.

The remaining evidence establishes Lowery's disability under section 12.05(C). Based on the July, 1988 WAIS–R score, Dr. Welch's other conclusions, and the consistent evidence in the March, 1963 report, Lowery met his burden of establishing an impairment under section 12.05(C). Because the ALJ could have only relied on the incomparable I.Q. scores in the March, 1963 report, we conclude that the ALJ did not have a scintilla of evidence to support the conclusion that Lowery's mental retarda-

tion was not lifelong within the meaning of section 12.05. Accordingly, we hold that substantial evidence does not support the ALJ's determination that Lowery did not satisfy the requirements for disability under section 12.05(C).

### CONCLUSION

For the foregoing reasons, the judgment of the district court is reversed.

REVERSED and REMANDED.