Billy J. COBB, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 02–G–1050–E.

United States District Court,
N.D. Alabama,
Eastern Division.

Dec. 18, 2003.

Darryl W Hunt, Clark & James LLC, Birmingham, AL, for Billy Joe Cobb, plaintiff.

Alice H Martin, U.S. Attorney, Edward Q Ragland, U.S. Attorney's Office, Birmingham, AL, Joseph P Palermo, III, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Billy J. Cobb, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Disability Insurance Benefits (DIB), a Period of Disability (POD) and Supplemental Security Income Benefits (SSI).

Billy J. Cobb filed an application for DIB and SSI on January 20, 2000. Thereafter, plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly,

this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

██ The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Robert G. Faircloth, determined the plaintiff met the first two tests, but concluded he did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote*, at 1559.

## DISCUSSION

██ The plaintiff alleges that he is disabled under Listing 12.05C. Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir.1993)(quoting Listing 12.05C). When considering whether the plaintiff has a

physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. *Davis* 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in *Edwards by Edwards v. Heckler:*

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir.1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If you impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the

listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C. In this circuit, it is presumed that a persons I.Q. remains fairly constant throughout her life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. *Hodges v. Barnhart,* 276 F.3d 1265, 1268–69 (11th Cir.2001). The *Hodges,* court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in *Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir.1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, she is presumptively disabled under the Listing if the other requirements of the Listing have been met. *Hodges,* 276 F.3d at 1269.

The Commissioner in brief states that she "does not dispute the validity of Plaintiff's May 2001 verbal IQ score of 67, performance IQ score of 68, and full scale IQ score of 65 as assessed by Dr. Fleming." (Comm'r's brief at 6.) The Commissioner, however, argues that the plaintiff is not mentally retarded in spite of his valid I.Q. score meeting the first part of Listing 12.05C. "As noted by the ALJ, Plaintiff's daily activities and his lengthy work history contradicts a diagnosis of mental retar-

dation." (Comm'r's brief at 7.) In *Lowery*, the court stated as follows:

> Although the ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score, an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid and finds that the claimant meets or equals the criteria of a listed impairment.

The Commissioner's analysis, at least regarding his work history, seems to be inconsistent with *Lowery*, which emphatically states that "an ALJ may not consider a claimant's age, education, and work experience after the ALJ accepts the I.Q. score as valid." 979 F.2d at 837. The court notes, however, that the *Lowery* court also states that it "has been recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." 979 F.2d at 837 (Citing *Popp v. Heckler*, 779 F.2d 1497 (11th Cir.1986)). A review of *Popp*, however, makes clear that the consideration goes to whether the I.Q. score is valid. In *Popp*, the court found the ALJ could properly find the plaintiff's I.Q. score to be "incredible because they were inconsistent with other evidence and because there was good reason to believe that Popp exaggerated his problems." *Popp* 779 F.2d at 1500. Therefore, it seems clear that the ALJ in *Popp* refused to credit the I.Q. scores. This is not surprising in view of the facts of that case. The plaintiff in *Popp* "held a two-year college associates degree and was enrolled in a third year of college as a history major." *Id.* at 1498. He had worked as an administrative clerk in the Army and after discharge had been employed as a statistical clerk. *Id.* His other jobs included "postal clerk, soil testing technician, cashier, and algebra teacher at a private school for grades ten through twelve." *Id.*

In the present case, the Commissioner concedes the plaintiff's I.Q. scores are valid. There is not substantial evidence in the record to support a finding that the plaintiff's daily activities or prior jobs are inconsistent with the descriptive definition of mental retardation contained in Listing 12.05. His prior relevant work, as described by the ALJ, was as "a cement finisher, a car wash detailer, and a street sweeper." [R 15] The vocational expert testified that the job plaintiff described as a "cement finisher," was "more of a helper and laborer," and was essentially heavy unskilled work. [R 52] There is nothing in the plaintiff's report of his daily activities suggesting he does not meet the descriptive definition of mental retardation. The Commissioner found the plaintiff has "chronic low back pain, mild mental retardation, depression and bilateral cataracts, ... impairments which cause significant vocationally relevant limitations." [R 17] Therefore, based upon the findings of the ALJ and the concessions of the Commissioner in brief, the plaintiff has met all the requirements of Listing 12.05C. He is, therefore, disabled within the meaning of the Social Security Act. An appropriate order will be entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under

this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended, 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.