[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12310
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 9, 2010
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-00002-MP-AK

MADIE E. GAINOUS,

          Plaintiff - Appellant,

versus

MICHAEL J. ASTRUE,
Commissioner of the Social Security Admnistration,

          Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 9, 2010)

Before TJOFLAT, CARNES and WILSON, Circuit Judges.

PER CURIAM:

     Madie Gainous, through counsel, appeals the district court's order affirming

the decision of the administrative law judge ("ALJ") to deny her application for Social Security Disability Insurance Benefits ("DIB"). Gainous claimed that she suffered from Meniere's disease[1] and lower back problems so severely that she should be declared disabled. She last worked in 1996 as a professor and her last date insured was December 31, 2001. On appeal, Gainous claims that the ALJ violated the "treating physician rule" when it did not give controlling weight the opinion of Dr. David Kaylie, who treated Gainous twice and said that she would not have been able to work a standard forty-hour week before her last date insured. The Appeals Council declined to review her case. After review, we affirm the order of the district court.

Gainous's appeal focuses on whether the ALJ gave proper weight to the opinion offered by her treating physician. She points out that our Circuit typically values the testimony of these doctors during DIB litigation. Accordingly, she argues that Dr. Kaylie's testimony regarding her condition prior to December 31, 2001, based on his review of her relevant medical history, should be fully credited.

---

[1]Meniere's is a "disease of the inner ear (the innermost of the three parts into which the hearing apparatus is divided) associated with a dilation of the membranous labyrinth . . . . It is characterized by attacks of dizziness, ringing in the ears, deafness, peculiar movements of the eyes (from side to side), and vomiting. The attacks come on at irregular intervals. The cause of the disease is not understood. The treatment has never been satisfactory, but some of the medicines used include diazepam, which relieves the vertigo and dizziness." J.E. Schmidt, 4 Attorney's Dictionary of Medicine M-122 (2005).

Gainous believes that Dr. Kaylie's testimony establishes that she was disabled as a matter of law on her last date insured and thus is entitled to benefits.

In the context of Social Security appeals, we review the decision of the ALJ as the Comissioner's final decision if (1) the ALJ denies benefits, and (2) the Appeals Council declines to review that decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted). The Commissioner's factual findings need only be supported by substantial-evidence, but his legal conclusions are subject to *de novo* review. *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam). In order to satisfy the substantial evidence requirement, the Commissioner's decision must be based on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citation omitted).

Eligibility for DIB requires the claimant to prove that she was disabled on or before her "insured status" expired. *See Moore*, 405 F.3d at 1211. There is a well-settled five-step process used to determine whether an applicant is disabled for DIB purposes:

In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty*, 245 F.3d at 1278 (internal citations omitted) (footnote omitted).

In determining whether a disability exists, the ALJ must give the opinion of the treating physician[2] "substantial or considerable weight unless 'good cause' is

---

[2]We assume that Dr. Kaylie qualifies as a "treating physician" for the resolution of this appeal. The Commissioner argues that since Dr. Kaylie treated Gainous "on only two occasions, he had not acquired the 'longitudinal picture' necessary when assigning additional weight to a treating source." But we note that this Court has refused to give greater weight to the opinion of a physician who only examined the plaintiff once. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) ("[Plaintiff] relies on the rule that opinions of treating physicians are generally entitled to more weight than opinions of nontreating physicians. We are unable to accept the application of that rule in this case because [physician] saw [plaintiff] only one time." (internal citations omitted)); *see also Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) ("The evidence submitted by appellant's treating physician . . . received all the consideration it was due. [Physician] saw appellant twice and submitted only sketchy, conclusory notes."). Even construing this issue in favor of Gainous does not save her appeal.

shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citation omitted ) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). This is true even if the physician did not treat the claimant until after the relevant period. *See Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983), *superseded by statute on other grounds, as recognized in Hand v. Heckler*, 761 F.2d 1545, 1548 n.4 (11th Cir. 1983). The ALJ is not, however, required to give controlling weight to issues reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(e). Issues such as whether a claimant is disabled, unable to work, or has an impairment that meets the Social Security listings fall into that category. *Id.*

Good causes for giving the treating physician's opinion less weight exists when (1) the treating physician's conclusion is not supported by the evidence, (2) the evidence supported a contrary finding, or (3) the opinion offered is conclusory or inconsistent with the treating physician's medical records. *See Phillips*, 357 F.3d at 1240–41. Additionally, the claimant's daily activities can contradict the treating physician's opinion and lessen its credibility. *See id.* at 1241. "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. If the ALJ does state specific reasons, however, failure to give the treating physician's opinion controlling weight is not reversible error so long as it is

supported by substantial evidence. *See Moore*, 405 F.3d at 1212.

The ultimate issue, whether Gainous is disabled, is left to the determination of the Commissioner, and thus Dr. Kaylie's opinion that Gainous could not work a typical work week is not binding on the ALJ. *See* 20 C.F.R. § 404.1527(e)(1). Beyond that, the ALJ had good cause not to give controlling weight to Dr. Kaylie's opinion. First, medical evidence contradicted the doctor's opinion. In reviewing Gainous's medical history, the ALJ pointed out physician assessments that showed Gainous enjoyed periods with little or no health problems in addition to her visits for various ailments. After discussing some of the points on Gainous's medical history rollercoaster, the ALJ stated that "[d]espite evidence to the contrary and diagnosis soley indicating chronic disequilibrium, Dr. Kaylie nevertheless concluded that the claimaint was 'incapable of working 8 hours a day, 5 days a week, even at a sedentary level due to fatigue and vertigo.'" That statement, viewed together with the ALJ's description of periods of sickness and health that precede it, conveys that the ALJ believed such a conclusory statement by Dr. Kaylie could not be justified based on the contrary medical history.

Second, the ALJ believed that Dr. Kaylie's opinion was contradicted by the activities Gainous performed after the expiration of her insured status. He cited two examples: (1) Gainous indicated that she exercised, which gave her back

6

problems, and (2) she became the caretaker of her mother whose health was declining. The ALJ concluded that these activities provided evidence that she was capable of meaningful activity well after her insured status expired.

Gainous also suggests that the ALJ erred by finding that she did not have Meniere's disease. That determination, however, does not appear as if it would have altered the ALJ's final determination that Gainous was capable of completing gainful activity. Ultimately, Gainous's problem was upright stability. Whether it was called Meniere's or not would not have affected the ALJ's determination. Thus, any error in this regard does not undermine the ALJ's determination on whether she is able to work. *See Moore*, 405 F.3d at 1213 n.6.

The ALJ's failure to give Dr. Kaylie's opinion controlling weight was supported by good cause and thus should be affirmed.

**AFFIRMED.**

7