[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12216
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00531-WTH-PRL

TIMOTHY READ,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 30, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Claimant Timothy Read appeals the district court's order affirming the Administrative Law Judge's decision denying his applications for disability insurance benefits and supplemental security income.  On appeal, Read argues that he met the criteria of the listed impairment for intellectual disability under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.  We affirm.

## I.    BACKGROUND

In 2010, Read filed applications for disability insurance benefits and supplemental security income with the Social Security Administration.  Alleging a disability onset date of March 1, 2008, Read represented that he was disabled and unable to work because of depression, bipolar disorder, a hernia, attention deficit hyperactivity disorder, cysts, and asthma.  He was let go from his last job as a prep cook on April 1, 2007.

The Commissioner of Social Security ("the Commissioner") denied Read's applications for benefits upon initial review and reconsideration.  After the ALJ initially rendered an unfavorable decision, the Appeals Council vacated the ALJ's decision and remanded for further consideration.

At a subsequent hearing before the ALJ following the Appeals Council's remand, the ALJ heard testimony from Read and a vocational expert.  Read testified that he lived with a Christian family who had taken him in.  He and his fiancé had broken up, but they have an 18-month-old daughter together.  They

have a shared custody arrangement, where Read has his daughter one week and the child's mother has her the next week. Read testified that he graduated ninth grade and then completed a job program.[1] He had worked at a pizza shop, but now gets by on food stamps. He also stated that he receives treatment from The Centers, Inc. every two or three months because of bipolar disorder and massive depression.

Read's attorney argued that Read met the criteria of the listed impairment for an intellectual impairment under § 12.05(B), based on Dr. Colleen Character's 2010 assessment, which showed that Read's full scale I.Q. was less than 59. She asserted that this later I.Q. test was a better reflection of Read's current functioning than the I.Q. tests performed at a younger age.

The vocational expert testified that based on Read's age, education, past work experience, and physical and mental limitations, he was capable of performing work as a wrapper and packer, a small products assembler, and a silverware wrapper.

Following the hearing, the ALJ issued a decision, concluding that Read was not disabled for purposes of disability insurance benefits or supplemental security income. Upon review of the record evidence, the ALJ determined that Reid suffered from cervical spinal disorder, left inguinal hernia, asthma, affective disorder, and mild mental retardation, but that these impairments did not meet or

---

[1] The ALJ and Read's attorney later clarified that Read completed twelfth grade and received a special diploma.

3

equal any of the listed impairments in the Social Security Administration regulations. The ALJ determined that Read had the residual functional capacity to perform light work with the additional restriction that he would need to perform simple, unskilled work or low, semi-skilled work. Based on this finding, in conjunction with the vocational expert's testimony that an individual with Read's limitations could perform work involving small products assembly, wrapping and packing, and silverware wrapping, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that Read could perform. Accordingly, the ALJ determined that Read was not disabled. The Appeals Council denied Read's request for review.

In October 2014, Read, represented by counsel, filed a complaint in the district court challenging the ALJ' denial of disability insurance benefits and supplemental security income. Read asserted that the ALJ erred by not making a conclusive finding of disability because Read met the criteria for establishing an intellectual disability under § 12.05(B) and (C) in the listing of impairments.

A magistrate judge issued a report and recommendation ("R&R"), recommending that the denial of disability insurance benefits and supplemental security income be affirmed. Citing 11th Circuit Rule 3-1, the magistrate judge informed the parties that they had 14 days to file written objections to the R&R's factual findings and legal conclusions and that failure to do so "waives that party's

4

right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation."

Read did not file any objections. The district court thereafter adopted the R&R and affirmed the Commissioner's denial of disability insurance benefits and supplemental security income.

## II.    DISCUSSION

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo*. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotations omitted). We may not reweigh the evidence and decide the facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

To be eligible for supplemental security income, a claimant must be under a disability. 42 U.S.C. § 1382(a)(1), (2); 20 C.F.R. § 416.912. To establish eligibility for disability insurance benefits further requires the claimant to show that he was under disability on or before the last date for which he was insured. 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore*, 405 F.3d at 1211.

In determining whether a claimant has proven that he is disabled, the ALJ must complete a five-step sequential evaluation process. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant has the burden to prove that (1) he "has not engaged in substantial gainful activity," (2) he "has a severe impairment or combination of impairments," and (3) his "impairment or combination of impairments meets or equals a listed impairment" such that he is entitled to an automatic finding of disability. *Id.* If the claimant is not able to meet or equal the criteria for a listed impairment, he must proceed to the fourth step, which requires showing that he is unable to do his past relevant work. *Id.* "At the fifth step, the burden shifts to the Commissioner to determine if there is other work available in significant numbers in the national economy that the claimant is able to perform." *Id.* If the Commissioner demonstrates that there are jobs that the claimant can perform, the claimant must show that he is unable to perform those jobs in order to establish that he is disabled. *Id.*

Read argues on appeal that he is entitled to a conclusive finding of disability because he met the criteria for showing an intellectual disability under § 12.05(B) or § 12.05(C) in the listing of impairments. However, Read arguably waived this

argument. *See* 11th Cir. R. 3-1.[2]  The magistrate judge notified Read that if he did not object to the R&R's proposed findings of fact and legal conclusions within 14 days he would "waive[] [his] right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation."  Despite that warning, Read did not object to the magistrate judge's finding that substantial evidence supported the ALJ's conclusion that Read did not meet the requirements of § 12.05.  Because the magistrate judge informed Read of the time period for objecting and the consequences of failing to do so, Read's failure to object constitutes a waiver of his right to appeal under our current rule. *See* 11th Cir. R. 3-1.

Nevertheless, even if Read did not waive his arguments on appeal, his claim would still fail under plain error review. *See id.*  ("In the absence of a proper objection . . . [we] may review an appeal for plain error if necessary in the interests

---

[2]  Our local rule provides that:

> A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice.

11th Cir. R. 3-1.

of justice.").[3]  At issue is whether Read meets the requirements for intellectual disability under § 12.05(B) or (C) in the listing of impairments.  To establish an intellectual disability under the version of § 12.05 applicable at the time of the ALJ's decision, a claimant was required to meet the diagnostic criteria in § 12.05's introductory paragraph, in addition to the specific severity requirements in one of the subparagraphs, A through D.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.05 (2013).[4]  The introductory paragraph requires that the claimant have (1) a "significantly subaverage general intellectual functioning," (2) with deficits in "adaptive functioning," (3) that manifested before age 22.  *Id.* §§ 12.00A, 12.05.

Read alleges that he meets the criteria of subparagraph B and C, relying mainly on Dr. Character's 2010 assessment showing that Read had a full scale I.Q. of 58.  Under § 12.05(B), a claimant meets the required level of severity for an intellectual disability when the claimant establishes "[a] valid verbal, performance, or full scale IQ of 59 or less."  *Id.* § 12.05(B).  To meet the required level of severity under § 12.05(C), the claimant must have:  (1) a "valid verbal,

---

[3]  We note that the Commissioner does not argue that Read's waived his right to appeal the magistrate judge's findings and conclusions, but instead asserts that we should review Read's arguments on appeal for plain error.

[4]  The criteria for establishing an intellectual disability under § 12.05 was recently amended, effective March 27, 2017.  *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 (2013), *with* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.05 (Mar. 27, 2017).  Here, we apply the version applicable at the time of the ALJ's decision. *Cf. Brady v. Heckler*, 724 F.2d 914, 919 (11th Cir. 1984) (indicating that we would apply the version of the regulations in effect at the time of the ALJ's decision, as that was the version relied on by the parties, the ALJ, the magistrate judge, and the district court but noting that both versions of the regulations were nearly identical).

performance, or full scale IQ of 60 through 70"; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See id.* § 12.05(C).  However, "a valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986)).

Here, the ALJ determined at step three of the sequential process that Read did not meet or equal the criteria for establishing an intellectual disability under § 12.05.  First, the ALJ noted that Read was able to dress, bathe, shave, and feed himself, as well as use the toilet on his own.  As to § 12.05(B), the ALJ noted that although Dr. Character's 2010 assessment indicated that Read's full scale I.Q. score was 58, the record established that Read's intellectual functioning was not significantly impaired.  The ALJ further determined that Read did not meet the criteria of § 12.05(C) because he graduated high school with a special diploma, takes care of his young daughter on his own, and independently cares for his own personal needs.

The ALJ did not plainly err in finding that Read did not meet or equal the requirements for establishing an intellectual disability under § 12.05(B) or (C). First, the record supports the ALJ's decision assigning little weight to Dr.

9

Character's assessment of Read's I.Q. because it was not supported by objective medical evidence. Although Dr. Character determined that Read had a full scale I.Q. score of 58 based on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), which placed him in the category of mild mental retardation, the record supports the ALJ's finding that Read's cognitive functioning is not significantly cognitively impaired. *See Popp*, 779 F.2d at 1499–1500 (rejecting a claimant's I.Q. score because it was not supported by record evidence).

As noted by the ALJ, Dr. Character was a consulting physician and her assessment of Read's I.Q. was done in conjunction with Read's social security disability claim. *Cf. McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (explaining that the opinion of a consulting physician is entitled to less weight than that of a treating physician). Moreover, the ALJ's finding that Read's I.Q. score is not consistent with his "daily activities and behavior" is supported by the record evidence. *See Popp*, 779 F.2d at 1500. Read graduated high school with a special diploma[5] and was employed at various jobs in 2011 and 2012 (though not at the level of substantial gainful activity), including at a fast food restaurant and with a lawn maintenance company. Read performs a vast range of daily activities such as caring for his pet birds, dressing, bathing, shaving, and using the toilet himself. He

---

[5] The record indicates that Read graduated high school with an Option 2 diploma. According to the Florida Department of Education, an Option 2 diploma requires a student to master a set of employment and community competencies identified in his graduation plan. Fla. Dep't of Educ., *Diploma Decisions for Students with Disabilities*, http://sss.usf.edu/resources/presentations/2008/fsca-doe-cd/FSCA_2008/AcadCareer/Helpful%20Guides/SpecDiploma.pdf.

occasionally prepares his own meals and goes out to eat.  His former fiancé reported that Read washes dishes and does laundry, watches television, plays on the computer, plays sports, and is able to pay bills, handle a savings account, and use a checkbook.  Indeed, the state agency psychological consultants determined that Read's former fiancé described him as capable of more activities than he reported himself.  And most telling, Read testified that he has shared custody of his 18-month-old daughter, meaning that Read and the child's mother alternate taking care of his daughter every other week.

For many of the same reasons, we further conclude that the ALJ did not plainly err by finding that Read did not meet the criteria for § 12.05(B) or (C) because he lacks the requisite deficits in adaptive functioning.  Although the regulations do not define adaptive functioning, the Social Security Administration Program Operations Manual System ("POMS"), states that adaptive functioning refers "to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age."  Soc. Sec. Admin., *Program Operations Manual System*, DI 24515.056(D)(2) (2012).

There is significant evidence in the record establishing that Read does not have the requisite deficits in adaptive functioning.  Again, Read graduated from high school with a special diploma, he takes care of his own personal needs, he

11

takes care of his pet birds, he cleans and does laundry, and he watches television and plays computer games.  He also shares custody of his young daughter.  Read and his former fiancé reported that Read does not have problems getting along with family, friends, or neighbors.  Likewise, the state agency psychological consultants indicated that Read is able to cooperate and act in a socially appropriate manner.

Accordingly, the ALJ did not plainly err by concluding that the limitations indicated by Dr. Character's 2010 I.Q. score did not accurately reflect Read's actual level of functioning and therefore he did not meet the criteria for an intellectual disability under § 12.05(B) or (C).

## III.    **CONCLUSION**

Based on the foregoing reasons, we affirm the district court's order affirming the Commissioner's denial of Read's applications for disability insurance benefits and supplemental security income.

**AFFIRMED.**