[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17163
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00790-KOB

MARK JONES,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 13, 2017)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Mark Jones appeals the district court's order affirming the Administrative Law Judge's ("ALJ") denial of his application for disability insurance benefits, 42 U.S.C. § 405(g).  Jones mainly argues that the ALJ erred in concluding that his mental impairments did not meet or equal the requirements of Listing 12.05(C), relating to intellectual disability.  After careful review, we affirm.

In Social Security appeals, we review whether the ALJ's decision is supported by substantial evidence and based on proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (internal quotation marks omitted).  In reviewing an ALJ's decision, we may not decide the facts anew, make credibility determination, or re-weigh the evidence, *id.*, and we must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The Social Security Administration uses a five-step, sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4). First, the claimant must show that he is not currently engaged in substantial gainful activity.  *See id.* § 404.1520(a)(4)(i).  Next, the claimant must show that he has a severe impairment.  *See id.* § 404.1520(a)(4)(ii).  A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Third, the claimant has the opportunity to show that the impairment meets or equal a listed impairment. *See id.* § 404.1520(a)(4)(iii). If a claimant meets that burden, the evaluation process terminates and the claimant is presumptively determined to be disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If no listing is met, the ALJ proceeds to the fourth and fifth steps, which involve an evaluation of whether the claimant could either return to his past relevant work or make an adjustment to other work despite the limitations caused by his impairments. 20 C.F.R. § 404.1520(a)(4)(iv), (v); *see Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Jones primarily alleges that the ALJ committed error at step three of the analysis. In particular, Jones contends that he met Listing 12.05(C) because he received a valid verbal IQ score of 63 during testing by Dr. Robert Storjohann, an examining psychologist.

Listing 12.05 covers the impairment, "Intellectual Disability."[1] To be considered for benefits under Listing 12.05, the claimant must meet the "diagnostic criteria" in the introductory paragraph of that listing, which are (i) significantly

---

[1] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013). This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id.* at 46499. But this change "d[id] not affect the actual medical definition of the disorder or available programs or services." *Id.* at 49500. We follow the agency's new nomenclature.

subaverage general intellectual functioning (ii) with deficits in adaptive functioning (iii) that manifested before age twenty-two. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00(A), 12.05.[2]

In addition to the diagnostic criteria, a claimant must satisfy any one of the four sets of criteria contained in subsections A–D. Under subsection C, the only subsection at issue here, a claimant must show that she has both "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C). A claimant's "severe impairment," as determined at step two, qualifies as an impairment imposing additional and significant work-related limitation of function for purposes of the second prong of subsection C. *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).

A valid IQ score of below 70 satisfies the first prong of subsection C and creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age twenty-two. *Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001). Nevertheless, a valid IQ score need not be treated as conclusive

---

[2] A revised Listing of Impairments went into effect on January 17, 2017, which altered the requirements for Listing 12.05. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sep. 26, 2016). However, we apply the regulations in effect in November 2013 and March 2015, the dates of the ALJ's decision and the Appeals Council's denial of review, respectively. *See id.* at 66138 n.1. ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

of intellectual disability where the IQ score "is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) ("The listing requires the [Commissioner] to take into account the intelligence test and the medical report. Moreover, the test results must be examined to assure consistency with daily activities and behavior."). In other words, evidence of a claimant's daily activities and behavior may show that the claimant has a greater degree of adaptive functioning than suggested by his IQ scores. *See Lowery*, 979 F.2d at 837. And an ALJ may rely on such evidence to find that the presumption of intellectual disability has been rebutted. *See Hodges*, 276 F.3d at 1269 (holding that the Commissioner may rebut the presumption of adaptive deficits before age twenty-two by presenting evidence relating to a claimant's daily activities and behavior).

Here, substantial evidence supports the ALJ's conclusion that, despite Jones's verbal IQ score, he did not meet or equal Listing 12.05. Contrary to Jones's assertion, the ALJ did not improperly reject the findings or opinion of Dr. Storjohann. The ALJ considered Jones's IQ scores and, consistent with Dr. Storjohann's conclusion that Jones's "overall abilities" were "in the borderline range," found that Jones had "the non-severe impairment of borderline intellectual functioning." While the ALJ noted the disparity between Jones's verbal IQ score

5

and his other, higher scores in perceptual reasoning, working memory, and processing speed, which suggested to the ALJ a learning disability rather than intellectual disability, that discrepancy was not the basis of the ALJ's decision finding that Jones did not meet Listing 12.05(C).

Instead, the record shows that the ALJ concluded that, despite his qualifying verbal IQ score of 63, Jones did not "exhibit the degree of deficits in adaptive functioning needed to support a finding under Listing 12.05."[3]    Substantial evidence supports that determination.  The ALJ noted that Jones worked for a number of years at the substantial gainful activity level, that he was involved in a committed relationship which included the care of children, and that his activities of daily living were not significantly restricted by intellectual limitations.

For instance, the record shows that Jones helped his children with their homework and that he did yard work and laundry.  Jones also reported that he could drive a car, shop in stores, pay bills, count change, handle a savings account, and use a checkbook.  While Jones was entitled to a presumption of deficits in adaptive functioning based on his IQ score, *see Hodges*, 276 F.3d at 1269, the evidence in the record was sufficient to rebut that presumption and to conclude that

---

[3] Although the Social Security regulations do not define "deficits in adaptive functioning," the Diagnostic and Statistical Manual of Mental Disorders states that adaptive functioning refers "to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background.  Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical." AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 37 (5th ed. 2013).

Jones did not meet the requirements of the diagnostic criteria in Listing 12.05. Because substantial evidence supports the ALJ's finding that Jones did not meet the diagnostic criteria of Listing 12.05, we affirm the ALJ's decision that Jones did not meet or equal a listed impairment.

Finally, Jones asserts that the ALJ failed to perform the required psychiatric review technique when evaluating his mental impairments. Agency regulations require the ALJ to use a "special technique" when evaluating mental impairments, which involves "separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (internal quotation marks omitted). The ALJ must "incorporate the results of this technique into the findings and conclusions." *Id.* at 1213–14.

Here, the ALJ properly incorporated the special technique's mode of analysis into the decision. Specifically, the ALJ evaluated and made findings with respect to each functional area, determining, "after consideration of the record as a whole," that Jones had no restriction of activities of daily living; no difficulties maintaining social functioning; no difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation.

Jones does not otherwise challenge the ALJ's determination that he was not disabled.  Accordingly, we affirm the denial of disability benefits.

**AFFIRMED.**