[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12362
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-01793-JHE

WESLEY DOUGLAS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(February 23, 2018)

Before MARCUS, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Wesley Douglas ("Claimant") appeals the district court's order affirming the Social Security Commissioner's denial of his application for supplemental security income ("SSI"), pursuant to 42 U.S.C. § 1383(c)(3).  On appeal, Claimant challenges the Administrative Law Judge's ("ALJ's") determination that Claimant's impairments did not meet Listing 12.05(B) or (C).  No reversible error has been shown; we affirm.

Our review of the Commissioner's decision is limited to whether substantial evidence supports the decision and whether the correct legal standards were applied.  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it."  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Under this limited standard of review, we may not make fact-findings, re-weigh the evidence, or substitute our judgment for that of the ALJ.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  We review de novo the district court's

determination about whether substantial evidence supports the ALJ's decision. Wilson, 284 F.3d at 1221.

A person who applies for SSI benefits must first prove that he is disabled. See 20 C.F.R. § 416.912(a).  A claimant is considered disabled "if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment" which is either expected to result in death or which has lasted or is expected to last for at least 12 months.  42 U.S.C. § 1382c(a)(3)(A). The claimant bears the burden of proving his disability and must produce evidence supporting his claim.  See Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ applied correctly the five-step evaluation process set forth in 20 C.F.R. § 416.920(a), in determining that Claimant was not disabled.  In pertinent part, the ALJ found that none of Claimant's impairments met or equaled a Listed Impairment, including for intellectual disability ("Listing 12.05").

For an impairment to meet Listing 12.05, it must satisfy both (1) the diagnostic description for intellectual disability as set forth in the listing's introductory paragraph and (2) one of four additional sets of criteria (listed in subparagraphs (A) through (D)).  See 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00, 12.05 (2014); see also 20 C.F.R. § 416.925.

3

The introductory paragraph to Listing 12.05 defines intellectual disability as requiring (1) significantly subaverage general intellectual functioning, (2) with deficits in adaptive functioning, (3) that manifested before age 22.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  The term "adaptive functioning" refers to the claimant's "progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age." See SOC. SEC. ADMIN., PROGRAM OPERATIONS MANUAL SYSTEM (POMS), DI 24515.056.D.2, http://policy.ssa.gov/poms.nsf/lnx/0424515056; see also AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 40 (4th ed. 1994) (defining "adaptive functioning" as referring "to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting.").  Examples of "adaptive activities" that may be considered in assessing a claimant's functional limitations include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, [and] caring appropriately for . . . grooming and hygiene." Id. § 12.00(C)(1).

Under the applicable version of Listing 12.05(B), a claimant meets the criteria for presumptive disability when he presents a verbal, performance, or full scale IQ score at or below 59.  Id. § 12.05(B).  A claimant may also demonstrate

the requisite level of severity by presenting a valid verbal, performance, or full scale IQ score of 60 through 70 on top of some other physical or mental impairment that imposes an additional and significant work-related limitation of function.  Id. § 12.05(C).

Although standardized intelligence tests can assist in verifying the presence of intellectual disability, they are only part of the overall assessment and should be considered in conjunction with developmental history and the degree of functional limitations.  Id. § 12.00(D)(6)(a).  We have recognized that an IQ score is inconclusive evidence of intellectual disability when it is inconsistent with other evidence of the claimant's daily activities and behavior.  Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

In this case, substantial evidence supports the ALJ's determination that Claimant failed to satisfy the criteria of Listing 12.05.  Although Claimant had a full scale IQ score of 56, his score was inconsistent with other record evidence about Claimant's activities of daily living and behavior.  For example, Claimant testified that he worked on cars since he was 12 years old and worked as an auto mechanic to support himself before sustaining injuries in a motorcycle accident. Claimant also reported that he shopped for groceries, kept his yard clean, sometimes attended church, enjoyed reading the Bible and going to see movies, and groomed and dressed himself independently.  An evaluating psychologist

reported that Claimant was able to answer a series of simple math problems and had the basic skills to manage funds.  Because Claimant's low IQ score was inconsistent with other evidence of his activities and behavior, his IQ score was not conclusive evidence of intellectual disability.  See Lowery, 979 F.2d at 837.  In addition, substantial evidence supports the determination that Claimant demonstrated insufficient deficits in adaptive functioning for purposes of satisfying the diagnostic criteria of Listing 12.05.

We reject Claimant's contention that the ALJ gave insufficient weight to Dr. Wilson's psychological examination and IQ test results.  First, an ALJ need not defer to the opinion of a doctor who -- like Dr. Wilson -- conducts a single examination.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).  Moreover, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).  Because Dr. Wilson's opinion about Claimant's intellectual capacity was inconsistent with other evidence in the record, the ALJ committed no error in deciding to afford little weight to Dr. Wilson's opinion.

Substantial evidence supports the ALJ's determination that Claimant's impairments did not meet Listing 12.05; we affirm.

AFFIRMED.

6