[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12024
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00182-WLS


TONY PERKINS,

                                                              Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(January 22, 2014)


Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Tony Perkins appeals the district court's order affirming the Social Security Administration's (SSA) denial of his applications for disability insurance benefits and supplemental security income.  Perkins asserts two issues on appeal, which we address in turn.  After review,[1] we affirm the denial of benefits.

## I.  LISTING 12.05(C)

Perkins first contends the Administrative Law Judge (ALJ) erred at step three of the sequential process because he meets the requirements of Listing 12.05(C) for mental retardation.  Two IQ tests showed that Perkins had an IQ between 60 and 70, but the ALJ erroneously concluded Perkins' adaptive functioning precluded him from meeting Listing 12.05(C).  Perkins asserts the ALJ specifically erred in concluding Perkins previously performed skilled work, that his past semiskilled work was inconsistent with mild mental retardation, and that past work is relevant to a disability determination when a claimant meets a listed impairment.  Perkins contends the ALJ did not adequately explain why Perkins' ability to perform daily activities was not consistent with mental retardation, and

---

[1]    We review the ALJ's decision in order to determine whether it is supported by substantial evidence, and whether the ALJ applied proper legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.* (quotations omitted).  We may not reweigh the evidence and decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

the ALJ erred in crediting the opinions of doctors who did not administer any IQ tests as opposed to the doctor who performed tests.

The Commissioner uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe and medically-determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a Listing, and meets the duration requirement; (4) can perform his past relevant work, in light of his residual functional capacity (RFC); and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *Id.*; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ determined, at steps one and two, that Perkins was not engaged in substantial gainful activity and had the following severe impairments: cirrhosis of the liver, GERD, degenerative disc disease and other spinal conditions, plantar warts, headaches, and a mental impairment variously described as possible borderline intellectual functioning, depression, anxiety, and bipolar disorder.

At step three, the ALJ concluded that these impairments did not meet or equal Listing 12.05(C) because Perkins did not suffer from mental retardation. A claimant is conclusively presumed to be disabled if he meets or equals the level of severity of a listed impairment, or Listing. *Crayton v. Callahan*, 120 F.3d 1217,

3

1219 (11th Cir. 1997).  In order to meet a Listing, the claimant must meet all of the specified medical criteria, and an impairment that fails to do so does not qualify no matter how severely it meets some of the criteria.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  The claimant bears the burden of demonstrating that he meets a Listing.  *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

To meet Listing 12.05 for mental retardation, "a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."  *Crayton*, 120 F.3d at 1219; *see* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05. A claimant must meet these diagnostic criteria in addition to one of the four sets of criteria found in 12.05(A), (B), (C), or (D) in order to show that his impairments are severe enough to meet or equal Listing 12.05.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, 12.00(A).

Listing 12.05(C) is met when the claimant shows: (1) "a valid verbal, performance, or full scale IQ of 60 through 70"; and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* at 12.05(C).  To meet the second requirement of Listing 12.05(C), a claimant must have one or more additional impairments that are "severe" in that they "significantly limit[] [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c); 20 C.F.R. pt. 404, subpt. P, app.

1, 12.00.  Thus, in deciding whether additional mental or physical impairments significantly affect a claimant's ability to perform basic work activities, the ALJ must consider the combined impact of the claimant's impairments.  *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993).

Listing 12.05(C) therefore requires a showing that the claimant meets the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning.  20 C.F.R. pt. 404, subpt. P, app. 1, 12.05; *see also Hodges v. Barnhart*, 276 F.3d 1265, 1268–69 (11th Cir. 2001) (stating an IQ score of 60 through 70 establishes a rebuttable presumption that impairment due to mental retardation was present before age 22 because IQ scores remain fairly constant throughout life).  A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992); *see also* 20 C.F.R. § 416.925(d) (explaining an impairment "cannot meet the criteria of a listing based only on a diagnosis," as a claimant must show a "medically determinable impairment[] that satisfies *all* of the criteria of the listing" (emphasis added)).  Once an ALJ accepts a claimant's IQ score as valid and finds that he meets or equals the other criteria of Listing 12.05,

5

the ALJ may not consider the claimant's age, education, or work experience in making a disability determination. *Lowery*, 979 F.2d at 837.

Substantial evidence supports the ALJ's conclusion that, despite Perkins' IQ scores, he did not meet or equal the criteria of Listing 12.05(C). First, the ALJ did not discredit the validity of Perkins' IQ tests, but only concluded that Perkins did not suffer from mental retardation as it is defined under Listing 12.05(C) because his deficits in adaptive functioning were not reflective of mental retardation. *See Popp v. Heckler*, 779 F.2d 1497, 1499–1500 (11th Cir. 1986) (concluding substantial evidence supported an ALJ's finding that, despite the claimant's IQ score of 69, other evidence in the record was inconsistent with mental retardation). While an ALJ may not consider a claimant's work experience after accepting an IQ score as valid and finding that the claimant meets Listing 12.05, here the ALJ determined that Perkins' adaptive functioning precluded him from meeting Listing 12.05(C). *See Lowery*, 979 F.2d at 837; *see also Popp*, 779 F.2d at 1500 ("[T]he ALJ was not required to find that [the claimant] was mentally retarded based on the results of the IQ test. The ALJ is required to examine the results in conjunction with other medical evidence and the claimant's daily activities and behavior."). Accordingly, the ALJ did not err by considering evidence of Perkins' work experience and adaptive functioning.

In considering evidence of Perkins' work experience, the ALJ's decision that

6

Perkins' past work was as a skilled cook is supported by substantial evidence. Perkins described his duties as those of a cook and made a statement that he managed others. Further, after reviewing Perkins' reported work history, the vocational expert (VE) concluded Perkins' past work was skilled. Later, when Perkins' attorney modified the hypothetical claimant's duties to exclude some responsibilities, the VE concluded that Perkins' past relevant work experience would still be semiskilled.

In considering Perkins' adaptive functioning, the ALJ's conclusion that Perkins had good activities of daily living is also supported by substantial evidence. Perkins reported a wide array of activities of daily living from 2006 to 2010, and the ALJ found Perkins' reports in 2010 and 2011 not credible based on contradictory claims regarding education, driving, his symptoms, and his prior employment and medical history. The ALJ made a corresponding credibility determination, supported by substantial evidence, that Perkins was less impaired than he presently contended. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (leaving credibility determinations to the ALJ).

As for Perkins' arguments regarding the weight assigned to Dr. Willers' opinion, Dr. Willers was not a treating physician and his opinion was thus not entitled to significant weight. *See Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (stating the opinions of nonexamining, reviewing physicians, "when

contrary to those of examining physicians, are entitled to little weight"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). To the extent Perkins argues the ALJ improperly rejected Dr. Willers' diagnosis of mild mental retardation, Dr. Willers' diagnosis of mental retardation is insufficient, standing alone, to meet Listing 12.05(C). *See* 20 C.F.R. § 416.925(d) ("Your impairment(s) cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria of the listing."). The ALJ's decision for not crediting Dr. Willers' opinion that Perkins suffered from mental retardation was supported by substantial evidence, as Dr. Willers' opinion was based on contradictory claims by Perkins and inconsistent with other medical opinions. Additionally, because the ALJ determined that Dr. Willers' opinions regarding Perkins' adaptive functioning were contrary to the record evidence, he correspondingly assigned Dr. Willers' opinions in this regard diminished weight. Thus, the ALJ did not completely disregard Dr. Willers' evaluation, and provided sufficient reasoning for assigning his opinions regarding adaptive functioning diminished weight. *See Winschel*, 631 F.3d at 1179 (explaining "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor").

Accordingly, the ALJ's decision regarding Listing 12.05 is supported by substantial evidence. *See id.* at 1178.

8

## II.  RFC ASSESSMENT

Perkins contends the ALJ's findings regarding his limitations are inconsistent with his ultimate conclusions regarding Perkins' RFC.  Specifically, the ALJ found Perkins had greater limitations than assessed by the state agency consultants, who determined Perkins was "significantly" limited in the ability to perform at a consistent pace, respond appropriately to changes in the work setting, and get along with coworkers, but then failed to include these restrictions in the RFC assessment.  Perkins asserts the ALJ failed to state with particularity the weight assigned to different medical opinions and the reasons why.  The ALJ also improperly assumed that a moderate limitation in the ability to maintain pace would not impact Perkins' ability to perform substantial gainful activity.

A claimant's RFC is an assessment, based upon all relevant evidence, of the claimant's ability to do work despite his impairments.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The ALJ considers all of the evidence in the record in determining the claimant's RFC.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The claimant bears the burden of proving that he is unable to perform his past relevant work, and if he meets that burden, the Commissioner bears the burden of determining whether there is other work available at the fifth step of the sequential evaluation process.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The Commissioner may

9

show "that the claimant can perform other jobs . . . through the testimony of a VE." *Id.* at 1229. "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.*

The three state agency mental RFC assessments relied on by the ALJ concluded that Perkins had no more than moderate limitations. The ALJ determined Perkins had moderate restrictions in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in maintaining concentration, persistence, and pace. Because the ALJ concluded out of an "abundance of indulgence" that Perkins "may be a little more limited" than the state agency RFCs indicated, the ALJ further limited Perkins' RFC to encompass simple tasks that required only a third grade reading ability, a structured environment, limited public contact, and no work requiring close coordination with coworkers. The ALJ's RFC thus adequately accounted for the state agency functional assessments to the degree they were credited. The ALJ then accounted for these additional limitations in his questions to the VE, who testified that even with such limitations Perkins could still perform substantial gainful activity. Thus, as the VE's testimony constituted substantial evidence, the ALJ did not make unsupported assumptions regarding Perkins' moderate limitations and was not inconsistent in concluding that Perkins had greater limitations than found by any

10

individual state agency doctor's mental RFC assessment but could still perform substantial gainful activity. *See Jones*, 190 F.3d at 1229.

Additionally, the ALJ gave adequate reasons for weighing the varying medial opinions differently. *See Winschel*, 631 F.3d at 1179. Dr. Willers' opinion was not entitled to controlling weight because he was a nonexamining physician, and the ALJ adequately pointed to varying inconsistencies between Dr. Willers' opinion and the evidence contained elsewhere in the record; the ALJ also explained the weight assigned to other medical opinion evidence. *See Sharfarz*, 825 F.2d at 280. Although the ALJ stated that contrary reports from some of Perkins' doctors made it difficult to say more than that he assigned their opinion "appropriate" weight, this adequately explains why the testimony was not deemed controlling. The ALJ's RFC assessment at step four is also supported by substantial evidence.

Accordingly, we affirm the denial of benefits.

**AFFIRMED.**